IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Marwah Nasr, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1469 |
| | ) | |
| The Anthem Companies, Inc., | ) | **Jury Trial Requested** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff Marwah Nasr ("Plaintiff"), by and through her undersigned attorneys, and for her Complaint against Defendant, The Anthem Companies, Inc. ("Defendant", and/or "Anthem"), states as follows:

## NATURE OF ACTION

1. This is an age discrimination retaliation and FMLA retaliation case against Defendant for illegally retaliating against Plaintiff by terminating her for opposing ongoing discrimination based on age and the exercise of FMLA rights in connection with promotion decisions at Defendant, which was done in violation of the Age Discrimination in Employment Act 29 U.S.C. § 623(d) (ADEA Retaliation) and the Family Medical Leave Act 29 U.S.C. § 2615 (FMLA Retaliation). Plaintiff also has claims for Illinois common law retaliatory discharge and under Illinois' Whistleblower Act (740 ILCS 174/20) ("IWA") because Plaintiff was terminated for refusing to engage in illegal activity (*i.e.*, aid and abet Defendant's illegal promotion/non-promotion scheme) and for blowing the whistle on such illegal misconduct to her superiors and Defendant's human resources department.

1

**JURISDICTION AND VENUE**

2.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which states that federal courts have primary jurisdiction over actions that arise under the laws of the United States. This Court has supplemental jurisdiction over all state and common law claims pursuant to 28 U.S.C. § 1367.

3.      Venue lies in the Northern District of Illinois. Defendant is engaged in business and resides in this District, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**PARTIES**

4.      Plaintiff Marwah Nasr is a resident of West Chicago, Illinois.

5.      Defendant Anthem is a health insurance company doing business in Chicago, Illinois.

6.      At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under the ADEA in that Defendant had 20 or more employees for each working day in each of the 20 or more calendar weeks during the relevant calendar years.

7.      At all relevant times, Defendant was an "employer" and Plaintiff was an "eligible employee" as defined under the FMLA (29 U.S.C § 2611) in that Defendant was and is engaged in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks within 75 miles of its Chicago, Illinois location and Plaintiff was employed by Defendant for at least 12 months at the location in Chicago, Illinois and worked at least 1,250 hours during the 12 months before he requested leave under the FMLA.

## PROCEDURAL BACKGROUND

8. On December 11, 2019, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A true and correct copy of that charge is attached hereto as Exhibit 1.

9. On January 30, 2020, the EEOC issued Plaintiff a notice of right to sue, which entitled her to institute a civil action within 90 days of the date of receipt thereof. A true and correct copy of that notice is attached hereto as Exhibit 2.

10. Plaintiff has filed this lawsuit within 90 days of receiving the EEOC's notice of Plaintiff's right to sue, thereby fulfilling all conditions precedent to the institution of his claims under the ADEA.

## FACTS

*ADEA, FMLA, IWA, and Illinois Common Law Retaliation*

11. Plaintiff worked for Defendant in its Medical Management department and had good evaluations and reviews during this time in the Defendant's Chicago location.

12. As background, Defendant is a health insurance plan provider and Plaintiff worked in a management position in the company's Medical Management department. In her role, a large part of her work dealt with ensuring that Defendant's clinical algorithm for determining "medical necessity" was effective and consistent with requirements under federal and state government programs (*e.g.*, Medicare, Medicaid, etc.).

13. If there was a concern whether Defendant's clinical algorithm improperly determined medical necessity inconsistent with a state mandate, Plaintiff would research that to determine whether the algorithm was correct or needed to be altered.

14. In addition, Plaintiff oversaw the clinical quality assurance program for the algorithm to ensure that it followed medical policy guidelines. She also managed the HR, hiring, training, performance evaluation functions in her department and for her 13 direct reports. In and before early 2018, all of Plaintiff's 13 direct reports held the same formal job position title – *i.e.*, Clinical Program Development Consultant – and thus were all capped on how much they were able to make regardless of their respective skill or seniority levels at Defendant.

15. In or around April 2018, Plaintiff and her supervisor, Dr. Bhavani Coca ("Dr. Coca"), began discussions about potentially creating multiple job position titles for her 13 direct reports in order to make a tiered pay and job position title structure. Plaintiff initially suggested a three-tiered structure: Clinical Program Development Consultant 1, Clinical Program Development Consultant 2 and Clinical Program Development Consultant 3.

16. Ultimately Dr. Coca agreed to Plaintiff's three-tiered structure but wanted to use job titles that already existed in Defendant's system to make the switch administratively easier. Thus, in or around April 2019, Defendant approved replacing the existing Clinical Program Development Consultant title for Plaintiff's 13 reports with three new job position titles (which reflected differing levels of seniority and pay): (1) Level 1 – Health Information Consultant; (2) Level 2 – Health Information Consultant Senior; and (3) Level 3 – Health Information Manager.

17. Now that the new three-tiered structure was established, the next step was for Plaintiff and Dr. Coca to figure out based on seniority and skill which of Plaintiff's 13 direct reports would be promoted to a higher tier.

4

18. On or about May 1, 2019, Plaintiff and Dr. Coca began discussing who to promote. Specifically, Dr. Coca already had prepared a spreadsheet on her computer and the spreadsheet contained the names of all 13 of Plaintiff's direct reports. For each name, Dr. Coca had highlighted whether that person was staying at their comparable job title (no promotion; stay at Level 1) or whether that person was going to be promoted to a higher job title (promotion; from Level 1 to Level 2). Dr. Coca suggested 4 individuals for promotion, with the remaining 9 individuals staying at Level 1. Plaintiff was a little surprised that the most senior Clinical Program Development Consultant, who was an excellent worker, was not promoted. Thus, Plaintiff asked Dr. Coca directly: "*What criteria did you use in selecting individuals for promotion?*" Dr. Coca stumbled a little bit to find an answer and then blurted out: "*Seniority.*"

19. At that, Plaintiff was completely confused as Dr. Coca denied a promotion to a highly skilled Clinical Program Development Consultant with the most seniority – 64-year old Tamara ("Tam") Brown who had started with the company on or around 2004 and actually trained everyone on Plaintiff's team. So, Plaintiff asked Dr. Coca point blank: "*Why did you decide to promote these four individuals over Tam [who had the most seniority]?*" In a surprisingly raw and honest response, Dr. Coca shockingly admitted that it was because *Tam was "retirement" age* (age: 64) and because *"Tam took extended [FMLA] time off."* Dr. Coca did not say that she decided to promote the 4 individuals over Tam because of skill level; it was all because Tam had taken FMLA time off and because she was nearing "retirement" age.

20. Plaintiff disagreed with the illegal criteria that Dr. Coca admitted using in denying Tam a promotion and did not want to facilitate Dr. Coca's illegal scheme to engage

5

in admitted age discrimination and FMLA discrimination. Thus, at first, Plaintiff expressly refused to facilitate the non-promotion decisions because they were illegal and Dr. Coca's demand that Plaintiff communicate fraudulent statements about the decision being a "collective" one when it clearly was not. Dr. Coca did not like Plaintiff's initial refusal and therefore commanded her to aid and abet her illegal discriminatory scheme. Specifically, Dr. Coca ordered Plaintiff to do so and ordered Plaintiff to admit that she helped in making the illegal discrimination decision: "***You will follow through with the decision and you will say it was a collective decision.***"

21. Things quickly got a lot worse. Because Dr. Coca persisted in her illegal scheme, Plaintiff was forced to blow the whistle on her and report the illegal discrimination to Dr. Coca's supervisor, Dr. Julie Thiel ("Dr. Thiel"). Dr. Coca did not like Plaintiff doing that. But reporting the illegal discrimination to Dr. Thiel was useless as ***Dr. Theil, in her own words, said it was a "good business decision" not to promote individuals nearing "retirement" age.*** Dr. Thiel said the matter was closed. And then the pattern of retaliatory conduct began.

22. On or about August 12, 2019, Plaintiff had her mid-year evaluation with Dr. Coca. Far from a true evaluation, Dr. Coca used the opportunity to scold Plaintiff about how Plaintiff should have never escalated the issue regarding her illegal discrimination to Dr. Thiel. Dr. Coca said: "***You went behind my back to report this to [Dr.] Julie [Thiel]. There is now a level of trust that has been lost.***" As such, Dr. Coca placed Plaintiff on a performance improvement plan ("PIP"). Dr. Coca added other items to "paper up" the file to support an upcoming termination. But when Plaintiff asked for additional details, Dr. Coca had none. Some excerpts of Dr. Coca's own contemporaneous writings that follow

6

show that Plaintiff was being readied for termination because she opposed and blew the whistle on Dr. Coca's illegal discrimination scheme and, as a result, could not be "trusted" anymore. In an August 13, 2019 email, Dr. Coca wrote, under <u>Insubordination</u>- "you have reached out to my manager in an attempt to override the decision made." Dr. Coca then wrote that Plaintiff's actions regarding her whistleblower activities and ADEA and FMLA complaints demonstrated "lack of transparency and trustworthiness."

23. Almost immediately after this retaliatory mid-year evaluation – which clearly portended an impending termination for Plaintiff – Plaintiff submitted a complaint with Defendant's HR department on or about August 21, 2019. In that complaint, Plaintiff stated that she was facing retaliation for opposing and refusing to participate in illegal discrimination. Plaintiff wrote in her complaint: "I have voiced concerns and feel that in turn I am being retaliated against. I should be comfortable voicing my concerns to my manager. I am now dealing with unsubstantiated accusations. I would like to work in a harassment free environment and feel comfortable voicing both my team's as well as my own concerns. If someone can please contact me as soon as possible as I feel that this is creating a stressful environment."

24. But nothing happened with HR. After not hearing from HR other than an automated response, Plaintiff sent a follow-up email to the general HR email address listed in the automated response on August 26, 2019. Plaintiff asked to speak to someone regarding her urgent complaint. Defendant's HR sent an email the next day stating that the HR person assigned to handle her matter would reach out to Plaintiff when that person was ready to schedule some time to speak to Plaintiff regarding her complaint. The representative that was assigned was Justine Kenner. After not hearing anything from Ms.

7

Kenner that day, Plaintiff sent another email on August 28, 2019 asking to speak to Ms. Kenner. Ms. Kenner responded that she could talk the afternoon of August 29, 2019.

25. Unfortunately, that HR meeting never happened as Dr. Coca terminated Plaintiff the morning of August 29, 2019. Dr. Coca called Plaintiff into a so-called "organizational update" meeting. Dr. Coca said that she and others were looking at the budget and trying to figure out ways to cut costs so they decided on "eliminating some positions." Not surprisingly, Plaintiff's position was one Dr. Coca decided to eliminate. This was nothing more than payback by Dr. Coca for Plaintiff's opposition to Dr. Coca's illegal discrimination.

26. As a result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to, loss of her job and income, loss of career opportunities, emotional distress and humiliation, amongst other damages.

## COUNT I
*ADEA: Retaliation*

27. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

28. Plaintiff complained to her superiors and Human Resources throughout 2019 about her supervisor's (Dr. Coca) illegal, age-based decision to not promote an employee who was 64 years old based on her age.

29. On or about August 12, 2019, Dr. Coca retaliated against Plaintiff for such complaints by giving Plaintiff an undeservingly poor mid-year evaluation because Plaintiff had gone over Dr. Coca's head to report her (Dr. Coca's) age-based discrimination to Dr. Coca's superior, Dr. Thiel.

8

30. On August 29, 2019, Dr. Coca terminated Plaintiff because of Plaintiff's opposition to and refusal to implement Dr. Coca's age-based discrimination scheme and because of Plaintiff's reports to Dr. Coca's superiors and Human Resources about Dr. Coca's age-based discrimination.

31. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant for violation of Plaintiff's rights under the ADEA,

b. Declare that the actions of Defendant were discriminatory,

c. Award Plaintiff compensatory damages, including, but not limited to, lost earnings, profits and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress,

d. Award Plaintiff liquidated damages in such amount as the Court deems proper,

e. Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action, and

f. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT II
### *FMLA: Retaliation*

32. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

33. Plaintiff complained to her superiors and Human Resources throughout 2019 about her supervisor's (Dr. Coca) illegal, decision to not promote an employee because that employee had requested FMLA leave.

34. On or about August 12, 2019, Dr. Coca retaliated against Plaintiff for such complaints by giving Plaintiff an undeservingly poor mid-year evaluation because Plaintiff had gone over Dr. Coca's head to report her (Dr. Coca's) FMLA-based discrimination to Dr. Coca's superior, Dr. Thiel.

35. On August 29, 2019, Dr. Coca terminated Plaintiff because of Plaintiff's opposition to and refusal to implement Dr. Coca's FMLA-discrimination scheme and because of Plaintiff's reports to Dr. Coca's superiors and Human Resources about Dr. Coca's FMLA-based discrimination.

36. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

37. Pursuant to the FMLA, Plaintiff is also entitled to recover liquidated damages and her attorneys' fees in pursuing this claim.

WHEREFORE, the Plaintiff, respectfully requests this Honorable Court enter Judgment for the Plaintiff and award Plaintiff the following damages:

    a.    Back wages, health insurance coverage, benefits and other compensation lost as a result of Defendant's violation of the FMLA;

    b.    Front pay;

    c.    Interest;

    d.    Liquidated damages;

    e.    Statutory damages in the maximum amount permitted by the Family Medical Leave Act; and

    f.    Attorneys' fees and costs in pursuing his claim.

## COUNT III
*Illinois Whistleblower Act: Retaliatory Discharge*

38. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

39. Plaintiff refused to aid and abet and engage in an admitted age/FMLA discrimination scheme to deny a promotion to a 64-year-old employee who had also requested FMLA leave because of that employee's age and the fact that the employee requested FMLA. Plaintiff further refused (initially) to engage in the illegal acts she was requested to engage in (*i.e.*, making false and fraudulent statements in emails in an attempt to cover up the illegal scheme, etc.).

40. As a result of Plaintiff's refusals, she was subjected to retaliation by way of poor performance evaluations and ultimately termination by the Defendant.

41. Such misconduct by the Defendant violated the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*

42. Defendant's stated purpose for Plaintiff's termination was false and a pretext inasmuch as Defendant fired Plaintiff in retaliation for refusing to engage in Defendant's illegal scheme whereby Dr. Coca's sought to commit illegal age discrimination and FMLA discrimination.

43. Through Defendant's actions in violation of the IWA, 740 ILCS 174/1 *et seq.*, Plaintiff has suffered damages including, but not limited to, loss of her job and income, loss of career opportunities, emotional distress and humiliation.

WHEREFORE, Plaintiff prays that this Court:

    a.    Enter judgment in favor of Plaintiff and against Defendant for violation of the Illinois Whistleblower Act;

    b.    Award Plaintiff compensatory damages, including, but not limited to, lost pay and future salary, supplemental compensation and benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

    c.    Award Plaintiff his attorneys' fees and costs, and non-taxable expenses pursuant to the Illinois Whistleblower Act, 740 ILCS 174/30;

    d.    Award Plaintiff punitive damages;

    e.    Award Plaintiff prejudgment and post judgment interest at the appropriate rate on all benefits and damages that are awarded, and

    f.    Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT IV
### *Illinois Common Law Claim For Retaliatory Discharge*

44. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

45. Plaintiff refused to aid and abet and engage in an admitted age/FMLA discrimination scheme to deny a promotion to a 64-year-old employee who had also

requested FMLA leave because of that employee's age and the fact that the employee requested FMLA. Plaintiff further refused (initially) to engage in the illegal acts she was requested to engage in (*i.e.*, making false and fraudulent statements in emails in an attempt to cover up the illegal scheme, etc.).

46. Plaintiff was also terminated because she was a "citizen-crime-fighter" in that she was terminated for "whistle-blowing" to her superiors and Human Resources about Dr. Coca's illegal scheme to deny a promotion to a 64-year-old employee who had also requested FMLA leave because of that employee's age and earlier FMLA request.

47. Plaintiff's reports to Defendant's managers and Human Resources led directly to Plaintiff's termination just weeks and then just days later.

48. Defendant's stated purpose for Plaintiff's termination was instead a pretext for terminating Plaintiff's employment with Defendant in retaliation for refusing to engage in Defendant's scheme to commit age and FMLA discrimination, and for reporting Dr. Coca's illegal scheme to Dr. Thiel and Human Resources.

49. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

    a. Enter judgment in favor of Plaintiff and against Defendant for violation of Illinois Public Policy;

  b.  Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

  c.  Award Plaintiff punitive damages in such amount as the Court deems proper;

  d.  Award Plaintiff his costs, and non-taxable expenses in this action;

  e.  Award Plaintiff prejudgment and post judgment interest at the appropriate rate on all benefits and damages that are awarded, and

  f.  Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

              Respectfully submitted,
              Marwah Nasr


              By: /s/ Michael A. Faccenda
                One of Her Attorneys

Michael A. Faccenda
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 708-497-3077
Email: maf@faccendalawgroup.com
ARDC No. 6239317

              By: /s/ Christopher P. Connors
                One of His Attorneys

Christopher P. Connors
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 312-994-2411
Email: cpc@faccendalawgroup.com
ARDC No. 6269559

# Exhibit 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☑ EEOC | 440-2020-01626 |

Illinois Department of Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Marwah Nasr | 847-800-0792 | 02/26/1985 |

| Street Address | City, State and ZIP Code |
|---|---|
| 9346 Home Circle Des Plaines, IL 60016 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Anthem Companies, Inc. | Over 20 | (800) 331-1476 |

| Street Address | City, State and ZIP Code |
|---|---|
| 220 Virginia Avenue Indianapolis, Indiana 46204 (Location where Ms. Nasr worked for Anthem is 8600 W Bryn Mawr Ave Unit 800S Chicago, IL 60631). | |

RECEIVED EEOC DEC 11 2019 CHICAGO DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☑ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☑ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 02/09/2019  Latest 08/29/2019 termination
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Anthem Companies, Inc. ("Anthem") illegally retaliated against me by terminating me on August 29, 2019, in violation of 29 U.S.C. § 623(d) for opposing ongoing workplace age discrimination. First, I was engaged in protected activity as I "opposed [a] practice made unlawful" under the ADEA (i.e., a promotion denial based on age) and voiced that opposition to my direct supervisor and my direct supervisor's supervisor. Second, I suffered an adverse employment action as I was terminated on August 29, 2019. And third, there is a causal link between my protected activity and the adverse action. My supervisor, Dr. Coca, admitted that she could no longer "trust" me after I did the right thing and reported age discrimination up the chain. Though Dr. Coca called my termination a so-called "job elimination," Dr. Coca was one of the key decision makers in selecting which job to eliminate just months after her bogus and retaliatory mid-year evaluation of me. As a result of Anthem's illegal retaliation against me for opposing age discrimination, I have suffered damages. Additional facts are included in my demand letter to Anthem which is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

12/10/19
Date    Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

# Exhibit 2

EEOC Form 161-B (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Marwah Nasr<br>c/o Christopher P. Connors<br>CONNORS & FACCENDA<br>901 West Hillgrove Ave.<br>La Grange, IL 60525 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-01626 | Michaela McGlynn,<br>Investigator | (312) 872-9717 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[ ]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____    1/30/2020
Julianne Bowman,               *(Date Mailed)*
**District Director**

Enclosures(s)

cc:    ANTHEM, INC
      Robert I. Wertheimer
      Associate General Counsel
      1820 Peachtree St. N.E.
      Atlanta, GA 30326

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☑ EEOC | 440-2020-01626 |

Illinois Department of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Marwah Nasr | 847-800-0792 | 02/26/1985 |

| Street Address | City, State and ZIP Code |
|---|---|
| 9346 Home Circle Des Plaines, IL 60016 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Anthem Companies, Inc. | Over 20 | (800) 331-1476 |

| Street Address | City, State and ZIP Code |
|---|---|
| 220 Virginia Avenue Indianapolis, Indiana 46204 (Location where Ms. Nasr worked for Anthem is 8600 W Bryn Mawr Ave Unit 800S Chicago, IL 60631). | |

RECEIVED EEOC
DEC 11 2019
CHICAGO DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☑ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☑ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 02/09/2019    Latest 08/29/2019
termination
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Anthem Companies, Inc. ("Anthem") illegally retaliated against me by terminating me on August 29, 2019, in violation of 29 U.S.C. § 623(d) for opposing ongoing workplace age discrimination. First, I was engaged in protected activity as I "opposed [a] practice made unlawful" under the ADEA (i.e., a promotion denial based on age) and voiced that opposition to my direct supervisor and my direct supervisor's supervisor. Second, I suffered an adverse employment action as I was terminated on August 29, 2019. And third, there is a causal link between my protected activity and the adverse action. My supervisor, Dr. Coca, admitted that she could no longer "trust" me after I did the right thing and reported age discrimination up the chain. Though Dr. Coca called my termination a so-called "job elimination," Dr. Coca was one of the key decision makers in selecting which job to eliminate just months after her bogus and retaliatory mid-year evaluation of me. As a result of Anthem's illegal retaliation against me for opposing age discrimination, I have suffered damages. Additional facts are included in my demand letter to Anthem which is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

12/10/19    /s/ Marwah Nasr
Date        Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)